1   David Barkan (SBN 160825)
    barkan@fr.com
2   FISH & RICHARDSON PC
    500 Arguello Street, Suite 500
3   Redwood City, CA 94063
    Tel: (650) 839-5070
4   Fax: (650) 839-5071

5   Michael McKeon (*pro hac vice*)
    mckeon@fr.com
6   FISH & RICHARDSON PC
    1425 K Street, NW
7   Washington, DC 20005
    Tel: 202-783-5070
8   Fax: 202-783-2331

9   Wasif Qureshi (*pro hac vice*)
    qureshi@fr.com
10  FISH & RICHARDSON PC
    1221 McKinney, Suite 2800
11  Houston, TX 77010
    Tel: (713) 654-5300
12  Fax: (713) 652-0109

13  Attorneys for Defendants
    SAMSUNG ELECTRONICS CO., LTD.,
14  SAMSUNG ELECTRONICS AMERICA, INC., and
    SAMSUNG TELECOMMUNICATIONS
15  AMERICA, LLC

16              UNITED STATES DISTRICT COURT

17             NORTHERN DISTRICT OF CALIFORNIA

18                SAN FRANCISCO DIVISION

19  ROTHSCHILD STORAGE RETRIEVAL         CASE NO. 3:15-cv-00539-EDL
    INNOVATIONS, LLC,
20                                        **SAMSUNG DEFENDANTS' NOTICE OF**
            Plaintiff,                    **MOTION AND MOTION FOR**
21                                        **JUDGMENT ON THE PLEADINGS**
        v.                                **BASED ON 35 U.S.C. § 101**
22                                        **(UNPATENTABLE SUBJECT MATTER)**
    SAMSUNG ELECTRONICS CO., LTD.,
23  SAMSUNG ELECTRONICS AMERICA,          Date:      May 26, 2015
    INC., AND SAMSUNG                     Time:      9:00 a.m.
24  TELECOMMUNICATIONS AMERICA,           Place:     Courtroom E, 15th Floor
    LLC,
25                                        Hon. Elizabeth D. Laporte
            Defendants.
26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................... 1

STATEMENT OF RELIEF ................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

    I.      INTRODUCTION ......................................................................................... 1

    II.      BACKGROUND -- THE PATENT-IN-SUIT ............................................. 3

    III.      LEGAL STANDARD ................................................................................... 5

          A.      Patentable Subject Matter is a Threshold Legal Issue Appropriately Decided on a Motion for Judgment on the Pleadings Pursuant to Rule 12(c) ............................................................................................. 5

          B.      Patent-Eligible Subject Matter Under Section 101: The Two-Part Test. ........................................................................................................ 6

          C.      Recent Decisions Consistently Invalidate Claims to "Computerized" Abstract Ideas ................................................................. 7

    IV.      THE CLAIMS OF THE PATENT-IN-SUIT ARE NOT ELIGIBLE FOR PATENTABILITY UNDER 35 U.S.C. § 101 ............................................... 8

          A.      The Claims of the Patent-in-Suit Are Directed to an Abstract Idea: Sorting and Sharing Photographs. ......................................................... 8

          B.      The Claims of the Patent-In-Suit Do Not Provide an "Inventive Concept" Sufficient to Transform the Claimed Abstract Idea Into a Patent-Eligible Invention. ................................................................... 13

    V.      CONCLUSION ........................................................................................... 19

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) (Rader, C.J., dissenting) ..........................................9

*Advanced Auctions LLC, v. eBay Inc.*,
  No. 13-cv-1612, 2015 WL 1415265 (S.D. Cal. Mar. 26, 2015) ...............................6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ........................................................................... *passim*

*Bascom Research, LLC v. LinkedIn, Inc.*,
  No. 12-cv-06293-SI, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015) ..............................2

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ................................................................................ *passim*

*In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*,
  774 F.3d 755 (Fed. Cir. 2014) ......................................................................2

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ..................................................................2, 6

*CLS Bank Int'l. v. Alice Corp. Pty.*,
  717 F.3d 1269 (Fed. Cir. 2013) (Lourie, J., concurring), *aff'd*, 134 S. Ct. 2347
  (2014) ....................................................................................................1

*Cogent Med., Inc. v. Elsevier Inc.*,
  No. 13-cv-4479-RMW, 2014 WL 4966326 (N.D. Cal. Sept. 30, 2014)............... *passim*

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)..........................................................2, 9, 10, 17

*CyberFone Sys., LLC v. Cellco P'ship*,
  885 F. Supp. 2d 710 (D. Del. 2012), *aff'd*, *CyberFone*, 558 F. App'x 988 ............10

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
  558 F. App'x 988 (Fed. Cir. 2014) ................................................................ *passim*

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011).................................................................16, 18

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014).........................................................................2

*Enfish, LLC v. Microsoft Corp.*,
  2:12-cv-07360-MRP-MRW, 2014 WL 5661456 (C.D. Cal. Nov. 3, 2014) .................9, 12, 14

*Hewlett Packard Co. v. ServiceNow, Inc.*,
    No. 14-cv-00570-BLF, 2015 WL 1133244 (N.D. Cal. Mar. 10, 2015) ........................2, 11, 16

*Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*,
    No. 13-cv-1274-SLR, 2014 WL 7215193 (D. Del. Dec. 18, 2014) ................................2, 8, 13

*Loyalty Conversion Sys. Co. v. Am. Airlines, Inc.*,
    No. 2:13-cv-655, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) .................................................6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) .................................................................................................... *passim*

*Open Text S.A. v. Alfresco Software Ltd*,
    No. 13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) .......................................3

*Open Text S.A. v. Box, Inc.*,
    No. 13-cv-04910-JD, 2015 WL 269036 (N.D. Cal. Jan. 20, 2015) ................................. *passim*

*OpenTV, Inc. v. Apple Inc.*,
    No. 14-cv-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ...................................2, 8

*OpenTV, Inc. v. Netflix Inc.*,
    No. 14-cv-01525-RS, 2014 WL 7185921 (N.D. Cal. Dec. 16, 2014) .......................................2

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014) ...................................................................................2, 15

*In re Roslin Inst. (Edinburgh)*,
    750 F.3d 1333 (Fed. Cir. 2014) ...............................................................................................5

*Shortridge v. Found. Constr. Payroll Serv., LLC*,
    No. 3:14-cv-04850-JCS, 2015 WL 1739256 (N.D. Cal. Apr. 14, 2015) ...................2, 6, 14, 18

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    No. 12-cv-6467 MMC, 2015 WL 269116 (N.D. Cal. Jan. 20, 2015) ........................................2

*In re TLI Commc'ns Patent Litig.*,
    No. 14-md-02534-TSE, 2015 WL 627858 (E.D. Va. Feb. 6, 2015) ................................ *passim*

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ............................................................................................2, 6

*Wolf v. Capstone Photography, Inc.*,
    No. 2:13-cv-09573-CAS-PJW, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014) ............... *passim*

**Statutes**

35 U.S.C. § 101 ................................................................................................... *passim*

## NOTICE OF MOTION

TO THE COURT AND ALL COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on May 26, 2015 at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom E of the above-titled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC ("Samsung") will and hereby do move pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings based on unpatentable subject matter under 35 U.S.C. § 101.

This motion is based on the memorandum below and the Declaration of Wasif Qureshi, all pleadings, papers and records on file in this action, and such oral argument as may be presented at the hearing on this matter.

## STATEMENT OF RELIEF

Samsung seeks judgment on the pleadings on the ground that all claims of U.S. Patent No. 8,437,797 are invalid as patent ineligible under 35 U.S.C. § 101.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Supreme Court has recently and repeatedly emphasized that "abstract ideas" may not be removed from the public domain and subjected to the monopoly granted by our patent laws. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012); *Bilski v. Kappos*, 561 U.S. 593, 601-2 (2010). Here, the claims of asserted U.S. Patent No. 8,437,797 (the "'797 Patent" or the "patent-in-suit") are directed to the abstract idea of sorting and then sharing photographs. The claims simply "computerize" the age-old idea of people sharing photographs—using generic mobile computing components that provide no substantive, meaningful limitations to "narrow, confine or otherwise tie down the claim[s] so that, in practical terms, [they do] not cover the full abstract idea itself"—and therefore do not meet the patentability requirements of 35 U.S.C. § 101. *CLS Bank Int'l. v. Alice Corp. Pty.*, 717 F.3d 1269, 1282 (Fed. Cir. 2013) (Lourie, J., concurring), *aff'd*, 134 S. Ct. 2347 (2014) (citing *Mayo*, 132 S. Ct. at 1300; *Bilski,* 561 U.S. at 611-12;

1    *Diamond v. Diehr,* 450 U.S. 175, 187 (1981)).

2        Indeed, since these recent Supreme Court decisions, the Federal Circuit and multiple

3    district courts across the country have invalidated under Section 101 patent claims to sorting,

4    storing, and transmitting digital photographs or data. *See, e.g.*, *Cyberfone Sys., LLC v. CNN*

5    *Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) ("[T]he well-known concept of

6    categorical data storage, *i.e.*, the idea of collecting information in classified form, then separating

7    and transmitting that information according to its classification is an abstract idea that is not

8    patent-eligible."); *In re TLI Commc'ns Patent Litig.*, No. 14-md-02534-TSE, 2015 WL 627858, at

9    *8 (E.D. Va. Feb. 6, 2015) ("Nor is there any doubt that the idea of taking, organizing,

10   classifying, and storing photographs qualifies as an abstract idea under *Alice* and *Mayo*."); *Wolf v.*

11   *Capstone Photography, Inc.*, No. 2:13-cv-09573-CAS-PJW, 2014 WL 7639820 (C.D. Cal. Oct.

12   28, 2014) ("The Court finds that the [patents-in-suit] are directed to the abstract idea of providing

13   event photographs organized by participant, as applied using the internet."); *Intellectual Ventures*

14   *I LLC v. Mfrs. & Traders Trust Co.*, No. 13-cv-1274-SLR, 2014 WL 7215193, at *10 (D. Del.

15   Dec. 18, 2014) ("[T]he claims as written would substantially preempt the creation of digital photo

16   albums or storage, the abstract idea.").

17       As evident by these and the multitude of other Federal Circuit and district court

18   opinions—including several decisions from the Northern District of California—invoking Section

19   101 after the Supreme Court's recent decisions in *Alice*, *Mayo*, and *Bilski*; patents, such as the

20   patent-in-suit, that fail to do something "significantly more" than simply describe an abstract idea

21   must be invalidated under Section 101.[1]   Accordingly, Samsung respectfully requests that this

---

22   [1] *See, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d
     1343 (Fed. Cir. 2014); *In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774
23   F.3d 755 (Fed. Cir. 2014); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014);
     *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014); *Planet Bingo, LLC v. VKGS LLC*,
24   576 F. App'x 1005 (Fed. Cir. 2014); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758
     F.3d 1344 (Fed. Cir. 2014); *Shortridge v. Found. Constr. Payroll Serv., LLC*, No. 3:14-cv-04850-
25   JCS, 2015 WL 1739256 (N.D. Cal. Apr. 14, 2015); *OpenTV, Inc. v. Apple Inc.*, No. 14-cv-01622-
     HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015); *Hewlett Packard Co. v. ServiceNow, Inc.*, No.
26   14-cv-00570-BLF, 2015 WL 1133244 (N.D. Cal. Mar. 10, 2015); *Open Text S.A. v. Box, Inc.*, No.
     13-cv-04910-JD, 2015 WL 269036 (N.D. Cal. Jan. 20, 2015); *Synopsys, Inc. v. Mentor Graphics*
27   *Corp.*, No. 12-cv-6467 MMC, 2015 WL 269116 (N.D. Cal. Jan. 20, 2015); *Bascom Research,*
     *LLC v. LinkedIn, Inc.*, No. 12-cv-06293-SI, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015); *OpenTV,*
28   *Inc. v. Netflix Inc.*, No. 14-cv-01525-RS, 2014 WL 7185921 (N.D. Cal. Dec. 16, 2014); *Cogent*

SAMSUNG'S MOT FOR JUDGMENT ON THE PLEADINGS BASED ON 35 U.S.C. § 101;
CASE NO. 3:15-CV-00539-EDL

1    Court find all claims of the patent-in-suit invalid and grant judgment on the pleadings.

2    **II.     BACKGROUND -- THE PATENT-IN-SUIT**

3         Plaintiff Rothschild Storage Retrieval Innovations, LLC ("RSRI") filed suit against

4    Samsung alleging infringement of the '797 Patent. The '797 Patent takes the well-known concept

5    of sorting and sharing photographs and describes it in the modern world using a generic image-

6    capturing mobile device such as a mobile phone having a camera. Ex. 1[2] at 2:17-24. Indeed,

7    the '797 Patent's specification explains the basic idea of the invention:

8         Oftentimes, groups of individuals appearing in a proximate location to one another
          find themselves capturing or attempting to capture digital photographic images of
9         the same or similar object(s), scenery, people, etc.

10   *Id*. at 1:44-47. Consequently, according to the '797 Patent:

11
          these groups of individuals are often friends, family, and/or acquaintances that
12        have the desire to share, distribute, and/or obtain copies of the digital photographic
          images captured by one another.
13
14   *Id*. at 1:47-51. The '797 Patent specification goes on to allege that:

15        there is a current need in the art for an image distribution system and method
          which is structured to dispose one or more capturing devices in a communicative
16        relation with one or more receiving devices for instantaneous, automatic, and/or
          selective distribution of images therebetween.
17
     *Id*. at 2:8-12. The '797 Patent thus acknowledges that the invention simply makes automatic or
18
     instantaneous a well-known, generic process of distributing images.
19
          Accordingly, each claim of the '797 Patent is directed to either a system or a method for
20
     sorting (filtering) and sharing (transmitting) sorted digital photographs between mobile devices.
21
     For example, claim 13 reads:
22
          13.  A method performed by an image-capturing mobile device,
23             comprising

24        receiving a plurality of photographic images;

25        **filtering the plurality of photographic images using a transfer**

26   *Med., Inc. v. Elsevier Inc.*, No. 13-cv-4479-RMW, 2014 WL 4966326, at *4 (N.D. Cal. Sept. 30,
     2014); *Open Text S.A. v. Alfresco Software Ltd*, No. 13-cv-04843-JD, 2014 WL 4684429 (N.D.
27   Cal. Sept. 19, 2014).
     [2] Unless otherwise indicated, all exhibits are attached to the Declaration of Wasif Qureshi, all
28   emphasis is added, and all internal citations, quotations, brackets, etc. are omitted.

**criteria; and**

**transmitting, via a wireless transmitter and to a second mobile device, the filtered plurality of photographic images,** wherein

the transfer criteria is a geographic location associated with a respective photographic image within the plurality of photographic images.

Ex. 1 at cl. 13.

The '797 Patent also describes that the elements for implementing the claimed image distribution idea are generic computing components. The specification describes a "capturing device" that the specification admits could comprise "virtually any device structured to capture one or more digital photographic images" (*id*. at 3:45-48), and "is certainly not limited to, a cellular telephone, PDA, video game console, etc., having the structures and or mechanism capable of capturing digital photographic images." *Id*. at 3:55-58. The specification similarly describes a "receiving device" that "generally comprises any device structured and disposed to receive the digital photographic images" transmitted from the capturing device, and need not even include a photo capturing capability. *Id*. at 4:41-49.

Apparatus claims 1, 5, 6, and 8 recite "a wireless receiver," "a wireless transmitter," and "a processor operably connected to the wireless receiver and wireless transmitter," yet the '797 Patent **specification makes no reference to these components**, requiring the conclusion that they are no more than generic computing components. The specification simply mentions that the two components are "disposable in a communicative relation with one another, for example, via a wireless network . . . ." *Id*. at 3:24-26, 4:9-15, 4:65-67.

Similar to traditional photographs having attributes such as location where they were taken, date when taken, and who or what is the subject of the photograph, the patent specification describes that the digital photographic images include a data component, such as title, subject matter (*e.g.,* Grand Canyon), "GPS and/or geographic location information . . . , date and time information (e.g., name, e-mail address, username, alias) . . . ." Ex. 1 at 5:45-54. The '797 Patent describes a way of **filtering** the digital photographic images for distribution to the receiving device by comparing the images' data components to a **transfer criteria**, so as to "determine

SAMSUNG'S MOT FOR JUDGMENT ON THE PLEADINGS BASED ON 35 U.S.C. § 101;
CASE NO. 3:15-CV-00539-EDL

which, if any, are in fact communicated" to the receiving device. *Id*. at 9:53-58, 9:32-44. As an

example, the '797 Patent describes that transfer criteria may be selected for filtering so as to send

only images of the Grand Canyon to a receiving device. *Id*. at 63-10:4. All asserted claims of the

'797 Patent recite this generic filtering step,[3] and certain claims simply specify the transfer

criteria, such as the geographic location of the image-capturing device (claims 1 and 9), a

geographic location associated with a respective photographic image (claims 5 and 13), the

transfer criteria is received from the second mobile device (claims 6 and 14), and the transfer

criteria is a subject identification of one of the photographic images (claims 3 and 11).

Independent claims 8 and 16 require, in addition to the basic idea of filtering and

transmitting filtered images, that the generic mobile devices are "disposed in a selectively paired

relationship with one another . . . ." Ex. 1 at cls. 8, 16; *see also* dependent claims 2, 4, 7, 10, 12,

15. Although the '797 Patent specification is silent on what this "relationship" *is*, it describes that

the mobile devices are disposed in this relationship "via at least one common pre-defined

criteria," such as being a member of a social group that the user may identify on their device. *Id*.

at 7:3-10, 7:31-37. Examples provided by the '797 Patent include that a group may be defined by

a user's "friends" on interactive social networks, such as LinkedIn or Facebook. *Id*. at 7:37-45.

However, the '797 Patent also acknowledges that sharing images via websites such as Shutterfly,

Kodak Easyshare, and Sony ImageStation, were already well-known services for sharing

photographs. *Id*. at 1:57-67. The '797 Patent simply claimed to implement this well-known

sharing idea amongst relationships using generic mobile computing devices.

## III.    LEGAL STANDARD

### A.    Patentable Subject Matter is a Threshold Legal Issue Appropriately Decided on a Motion for Judgment on the Pleadings Pursuant to Rule 12(c).

Patent eligibility under 35 U.S.C. § 101 is a question of law. *In re Roslin Inst.*

*(Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014). Moreover, invalidity under Section 101 is a

"threshold test." *Bilski*, 561 U.S. at 602. Accordingly, "[c]hallenges to patentability under section

101 may be brought based solely on the pleadings, including on a Rule 12(c) motion for judgment

---

[3] The '797 Patent includes sixteen claims—four independent and four dependent system claims and three independent and five dependent method claims that mirror the system claims.

on the pleadings." *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 269036, at *2 (N.D. Cal. Jan. 20, 2015); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014) (affirming a Rule 12(c) judgment on the pleadings of invalidity under Section 101); *Shortridge v. Found. Constr. Payroll Serv., LLC*, No. 3:14-cv-04850-JCS, 2015 WL 1739256 (N.D. Cal. Apr. 14, 2015) (granting judgment on the pleadings of invalidity under section 101); *Advanced Auctions LLC, v. eBay Inc.*, No. 13-cv-1612, 2015 WL 1415265 (S.D. Cal. Mar. 26, 2015) (same); *Wolf v. Capstone Photography, Inc.*, No. 2:13-cv-09573-CAS-PJW, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014) (same); *Loyalty Conversion Sys. Co. v. Am. Airlines, Inc.*, No. 2:13-cv-655, 2014 WL 4364848, at *4 (E.D. Tex. Sept. 3, 2014) (same). And courts may rule on challenges to patentability under Section 101 without resolving claim construction issues. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713, 717 (Fed. Cir. 2014) (affirming dismissal on Rule 12(b)(6) grounds that patent was directed to a patent-ineligible abstract idea without formal claim construction); *Cogent Med., Inc. v. Elsevier Inc.*, No. 13-cv-4479-RMW, 2014 WL 4966326, at *3 (N.D.Cal. Sept. 30, 2014) (declining to delay resolution of the § 101 issue because "claim construction [was] not necessary to determine whether the '879 Patent claims patent-eligible subject matter").

### B.        Patent-Eligible Subject Matter Under Section 101: The Two-Part Test.

The Supreme Court has recently stressed that "abstract ideas" may not be removed from the public domain. *See Alice*, 134 S. Ct. at 2354; *Mayo*, 132 S. Ct. at 1293; *Bilski*, 561 U.S. at 601-2. Abstract ideas "are 'part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none.'" *Bilski*, 561 U.S. at 602 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)).

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has explained, however, that Section 101 "contains an important implicit exception:  Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad*

*Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)); *see also Mayo*, 132 S. Ct. at 1293; *Bilski*, 561 U.S. at 601. A patent on an abstract idea alone is problematic because it effectively pre-empts the use of the idea itself. *See Alice*, 134 S. Ct. at 2354-55; *Bilski*, 561 U.S. at 608-12; *Mayo*, 132 S. Ct. at 1293-94 (explaining that by covering a broad range of potential known and unknown uses of an abstract idea, a patent would pre-empt an entire field).

The Supreme Court has set forth a two-part test to determine the patent eligibility of claims under Section 101. *Alice*, 134 S. Ct. at 2355. First, a court determines whether the claims "are directed to a patent-ineligible concept," such as an abstract idea. *Id*. If so, a court proceeds to the second step and must "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id*. These "additional elements" must be "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357. Moreover, "'well-understood, routine, conventional activity'" or technology—including general-purpose computers and computer networks—does not provide an "'inventive concept.'" *Id.* at 2357-59 (quoting *Mayo*, 132 S. Ct. at 1294). "Thus, if a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility." *Id.* at 2358. Essentially, a patent must do more than simply state the abstract idea while adding the words "apply it with a computer." *Id*.

**C.** **Recent Decisions Consistently Invalidate Claims to "Computerized" Abstract Ideas.**

Since *Alice*, *Mayo*, and *Bilski*, the Federal Circuit and multiple district courts across the country, including the Northern District of California, have invalidated patents directed to computer-implemented abstract ideas under Section 101:

- "[T]he well-known concept of categorical data storage, *i.e.*, the idea of collecting information in classified form, then separating and transmitting that information according to its classification is an abstract idea that is not patent-eligible." *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014).

- "[T]he '295 patent claims at issue are clearly directed to the abstract idea of taking, organizing, classifying, and storing photographs. Nor is there any

-7-

doubt that the idea of taking, organizing, classifying, and storing photographs qualifies as an abstract idea under *Alice* and *Mayo*." *In re TLI Commc'ns Patent Litig.*, No. 14-md-02534-TSE, 2015 WL 627858, at *8 (E.D. Va. Feb. 6, 2015).

- ▪ "The Court finds that the practically identical '214 and '875 patents are directed to the abstract idea of providing event photographs organized by participant, as applied using the internet." *Wolf v. Capstone Photography, Inc.*, No. 2:13-cv-09573-CAS-PJW, 2014 WL 7639820, at *10 (C.D. Cal. Oct. 28, 2014).

- ▪ "[T]he claims as written would substantially preempt the creation of digital photo albums or storage, the abstract idea. The '587 patent is directed to patent ineligible subject matter." *Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*, No. 13-cv-1274-SLR, 2014 WL 7215193, at *10 (D. Del. Dec. 18, 2014).

- ▪ "The problem of how to transmit, receive, store, and organize confidential information deriving from multiple sources is not a creature of the Internet age: solutions to this problem date back to the invention of smoke signals. It is telling that the key step in the claimed invention, the transmission of the specific confidential information, can be accomplished via 'mail' or 'telephone.'" *OpenTV, Inc. v. Apple Inc.*, No. 14-cv-01622-HSG, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015).

Here, the asserted claims of the '797 Patent claim nearly identical concepts to "computerize" the abstract idea of sorting and sharing photographs, and should therefore also be found invalid.

## IV. THE CLAIMS OF THE PATENT-IN-SUIT ARE NOT ELIGIBLE FOR PATENTABILITY UNDER 35 U.S.C. § 101

### A. The Claims of the Patent-in-Suit Are Directed to an Abstract Idea: Sorting and Sharing Photographs.

The first step under *Alice* is to determine whether the claims of the patent-in-suit are directed to an abstract idea (*i.e.*, a "patent-ineligible concept"). *Alice*, 134 S. Ct. at 2353. "In determining whether an idea in a software patent is abstract, courts must be careful to avoid allowing the typically convoluted claim language—'patent-ese'—to obfuscate the general purpose and real essence of software patent claims." *In re TLI Commc'ns*, 2015 WL 627858, at *6. When evaluating whether the claims of the asserted patent are directed to an abstract idea, "the Court distills the gist of the claim." *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 269036, at *2 (N.D. Cal. Jan. 20, 2015) (citing *Bilski*, 561 U.S. at 611-12); *see also*

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1347-48 (Fed. Cir. 2013) (Rader, C.J., dissenting) (describing majority opinion as "strip[ping] away" claim limitations to arrive at abstract idea); *Enfish, LLC v. Microsoft Corp.*, 2:12-cv-07360-MRP-MRW, 2014 WL 5661456, at *4 (C.D. Cal. Nov. 3, 2014) ("Courts should recite a claim's purpose at a reasonably high level of generality. Step one is a sort of 'quick look' test, the purpose of which is to identify a risk of preemption and ineligibility.").

Here, when the gist of each claim of the '797 Patent is distilled, it is apparent that the '797 Patent claims simply recite the abstract idea of sorting and then sharing photographs. This is the very type of activity the Supreme Court has decreed to be abstract and not deserving of patent protection. *See Alice*, 134 S. Ct. at 2356. The '797 Patent includes a set of method claims (9-16) and a set of nearly identical apparatus claims (1-8), of which claims 13 and 5 are representative[4] and set forth the abstract and non-inventive idea of sorting and sharing photographs. Every claim of the '797 Patent includes the two basic steps of: (1) filtering photographs, and (2) transmitting the filtered photographs to another mobile device. For example, claim 13 reads:

> 13. A method performed by an image-capturing mobile device, comprising
>
> receiving a plurality of photographic images;
>
> **filtering the plurality of photographic images using a transfer criteria; and**
>
> **transmitting, via a wireless transmitter and to a second mobile device, the filtered plurality of photographic images,** wherein
>
> the transfer criteria is a geographic location associated with a respective photographic image within the plurality of photographic images.

Ex. 1 at cl. 13 (emphasis added).

System claim 5 is nearly identical, adding only a wireless receiver, a wireless transmitter, and a processor:

> 5. An image-capturing mobile device, comprising
>
> a wireless receiver;

---

[4] *See Content Extraction*, 776 F.3d at 1348 (approving use of representative claims in deciding section 101 motions); *Open Text*, 2015 WL 269036, at *2 (same).

a wireless transmitter; and

a processor operably connected to the wireless receiver and the wireless transmitter, wherein the processor is configured to initiate and/or perform

receiving a plurality of photographic images;

**filtering the plurality of photographic images using a transfer criteria; and**

**transmitting, via the wireless transmitter and to a second mobile device, the filtered plurality of photographic images,** wherein

the transfer criteria is a geographic location associated with a respective photographic image within the plurality of photographic images.

Ex. 1 at cl. 5 (emphasis added). These generic computer components, however, are implementation-specific details that must be stripped away in order to discern the gist of the claim. *See Open Text*, 2015 WL 269036, at *3 ("Shorn of its implementation-specific fleece, the claim is directed at providing a method for people to collaborate and share information without the need for specialized software or expertise."). Indeed, the '797 Patent specification itself provides no description of the claimed wireless receiver, wireless transmitter, and processor components. The basic concept of each claim thus simply includes: (1) sorting photographs using a transfer criteria, and (2) sharing the sorted photographs. Even RSRI has distilled the invention down to this basic idea, describing the alleged "infringing functionalities" as "sharing a group of photos based on their geographic locations within their 'Locations' album to another mobile device." Dkt. 42 (RSRI Second Amended Complaint) at 5.

The Federal Circuit has found similar disembodied concepts to be nothing more than abstract ideas. In *CyberFone*, for example, the patent was distilled to the steps of obtaining, sorting, and storing data, for which "the court finds the abstract nature of this patented process to be manifestly apparent." *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 719 (D. Del. 2012), *aff'd*, *CyberFone*, 558 F. App'x 988; *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (characterizing abstract idea as "1) collecting data, 2) recognizing certain data within the collected data set, and

3) storing that recognized data in a memory" despite claim's recitation of specific limitations, like scanner).

The idea of sorting and sharing photographs is a basic human activity that has been around for many years prior to the advent of digital cameras and computer processors. Anyone who took photographs and shared them with friends or family would easily recognize the process described in the claims of the '797 Patent. For example, John goes on a road trip through the United States and takes photographs of his trip. John wants to share some of his photographs with Jane. John looks at all of his photographs and (1) sorts them using a criteria, such as the location where the photograph was taken, so as to share only the photos he took in California. After sorting the photographs, John then (2) shares with Jane the sorted photographs he found that were taken in California. This simple process—which is nothing more than a mental process set in a general technological environment—is the essence of the '797 Patent claims. It is clear that, when the implementation details of each claim are removed, the '797 Patent claims recite nothing more than an abstract idea that meets the first prong of the *Alice* test.

The '797 Patent specification even recognizes that "it is rather common for one or more of the photographers or individuals capturing the digital photographic image(s) to express his or her intent to share or otherwise distribute the image(s), for instance by e-mailing them directly to the other individuals and/or uploading the image(s) to an accessible location on the World Wide Web." Ex. 1 at 1:58-63. The '797 Patent accordingly simply alleges that "there is a current need in the art for an image distribution system and method which is structured to dispose one or more capturing devices in a communicative relation with one or more receiving devices for instantaneous, automatic, and/or selective distribution of images therebetween." *Id*. at 2:8-12. Simply automating, or making instantaneous, the generic process of distributing images, which is exactly how the named inventor described his alleged invention, is not patent eligible subject matter. *Cogent Med., Inc. v. Elsevier Inc.*, No. 13-cv-4479-RMW, 2014 WL 4966326, at *4 (N.D.Cal. Sept. 30, 2014) (rejecting claims that cover "no more than a computer automation of what 'can be performed in the human mind, or by a human using a pen and paper'") (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)); *Hewlett*

*Packard Co. v. ServiceNow, Inc.*, No. 14-cv-00570-BLF, 2015 WL 1133244, at *11 (N.D. Cal. Mar. 10, 2015) ("[T]he claims generically claim any computer-implemented automation of resolving IT incidents. This is an abstract idea and thus is not patentable").

The level of abstraction here, of sorting and sharing photographs, is nearly identical to that of the claims held invalid in *Cyberfone, Enfish, In re TLI Communications, Wolf, and Intellectual Ventures*. For example, the Federal Circuit in *Cyberfone* invalidated a claim covering a method for transmitting data transactions from a telephone. *Cyberfone*, 558 F. App'x at 990. In affirming invalidity under Section 101, the Federal Circuit ruled that "the well-known concept of categorical data storage, *i.e.,* the idea of ***collecting information*** in classified form, ***then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible***." *Id*. at 992; *see also Enfish*, 2014 WL 5661456, at *7 (finding the claims were "addressed to the abstract purpose of storing, organizing, and retrieving memory in a logical table").

The district court in *In re TLI Communications* invalidated claims especially similar to those of the '797 Patent, concluding that "the '295 patent claims at issue are clearly directed to the abstract idea of taking, organizing, classifying, and storing photographs." *In re TLI Commc'ns*, 2015 WL 627858, at *8. The court reasoned that "the taking, organizing, classifying, and storing of photographs in the '295 patent is a common practice that long predates computers, as persons have taken, organized, classified, and stored photographs for more than a century without the aid of computers." *Id*. As such, the court found that the representative claim is "clearly a method that can be performed by human thought alone and is therefore merely an abstract idea and is not patent eligible under § 101." *Id*. Like the claims at issue in *In re TLI Communications*, the claims here can also be performed by human thought alone (sharing a selected photo), and therefore are not patent eligible under Section 101.

Similarly, the district court in *Wolf* invalidated comparable claims that involved "taking photographs of at least one participant of a sporting event," "associating identifying data with each photograph," and "cataloging [ ] photographs in a web-site server according to identifying data." *Wolf*, 2014 WL 7639820, at *1. The district court found that the claims were "directed to

-12-

the abstract idea of providing event photographs organized by participant, as applied using the internet." *Id.* at *10; *see also id.* at *12 ("[T]he independent claims do nothing more than recite a series of conventional steps carried out using basic camera and computer functions and mostly essential to placing searchable event photographs online for inspection and ordering."). Here, the claims of the '797 Patent also recite a series of conventional steps. Like in *Wolf*, carrying out these conventional steps on a basic digital camera, a general purpose computer processor, a wireless receiver and transmitter does not make them patent eligible.

As yet another example, the district court in *Intellectual Ventures* invalidated a patent "directed to a method, system and apparatus for automatically organizing a large number of images that may be obtained from a variety of different sources." *Intellectual Ventures,* 2014 WL 7215193, at *10. The court in *Intellectual Ventures* reasoned that the claims of the patent were essentially directed to the abstract idea of "scanning groups of images and organizing them" and held that "[t]his is akin to a computerized photo album, a routine and conventional idea." *Id*.

The basic idea of sorting and sharing photographs as claimed by the '797 Patent is no different than the abstract ideas found unpatentable in *Cyberfone*, *In re TLI Communications*, *Wolf* and *Intellectual Ventures* and even more generic than the concepts of intermediated settlement and hedging rejected in *Alice* and *Bilski*. The basic idea of sorting and sharing images is a generic non-inventive concept that a patentee cannot monopolize.

**B.     The Claims of the Patent-In-Suit Do Not Provide an "Inventive Concept" Sufficient to Transform the Claimed Abstract Idea Into a Patent-Eligible Invention.**

Step two of the Supreme Court's *Alice* test requires that a patent claim involve something "significantly more" than to just describe an abstract idea. *Alice*, 134 S. Ct. at 2355. The claims must contain an "inventive concept" sufficient to transform the claimed abstract idea into a patent-eligible invention. *Id*. at 2357. Each claim of the '797 Patent fails to present any "inventive concept" that supports patentability.

**1.     Implementation on Generic Computer Components Fails to Supply an "Inventive Concept."**

That the system claims require "a wireless receiver," "a wireless transmitter," and "a

processor" does not provide an inventive concept. Ex. 1 at cls. 1-8. The Supreme Court has explained that the introduction of a general-purpose computer into patent claims does not transform an abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2357-58; *see also Shortridge v. Found. Constr. Payroll Serv., LLC*, No. 3:14-cv-04850-JCS, 2015 WL 1739256, at *12-14 (N.D. Cal. Apr. 14, 2015) (concluding that claim elements directed to "generic descriptions of computer components," such as "a computer processor," did not add a sufficiently inventive element to avoid invalidity under section 101). Simply stating an abstract idea "while adding the words 'apply it with a computer' is not enough for patent eligibility." *Id*. Thus, in *Alice*, the Court explained that "the relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea of intermediated settlement on a generic computer." *Id*. at 2359. Like the claims in *Alice*, the function performed by the computer at each step of the '797 Patent claims is "purely conventional," and the claims merely require "a generic computer to perform generic computer functions." *Id*. The claims at issue therefore amount to "nothing significantly more" than the abstract idea using "some unspecified, generic computer," which is "not 'enough' to transform an abstract idea into a patent-eligible invention." *Id.* at 2360 (quoting *Mayo*, 132 S. Ct. at 1297). That the asserted claims "computerize" the abstract idea of sorting and sharing photographs using generic mobile computing components cannot create a patent-eligible invention.

Aside from requiring that the processor be "operably connected to the wireless receiver and the wireless transmitter," the claims and the specification fail to provide any further detail about the claimed wireless receiver, wireless transmitter, and processor. As such, these elements merely provide a "technological environment" to apply the claimed abstract idea and therefore do not supply anything significant to the claims to render them patentable subject matter. *See Alice*, 134 S. Ct. at 2358 ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment."); *Enfish*, 2014 WL 5661456, at *5 ("A claim cannot avoid this preemption concern by limiting itself to a particular technological environment."); *see also Cyberfone*, 588 F. App'x at 993 ("The 'telephone' recited in claim 1 is not a specific machine, and adds nothing of significance to the

-14-

claimed abstract idea."); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (finding that the claims recite "a generic computer implementation of the covered abstract idea" even though the claims required "a computer with a central processing unit, a memory, an input and output terminal, a printer, in some cases a video screen, and a program . . . enabling the steps of managing a game of bingo"); *Wolf*, 2014 WL 7639820, at *12 (finding "computer network server," "web-site server," and "digital camera" limitations "generic technological categories" that do not support patentability).

The filtering step of the '797 Patent also fails to supply anything inventive. For example, the Federal Circuit in *Cyberfone* "invalidated a patent that claimed a method for obtaining a single data stream, separating that data stream into individual components, and then sending those individual components to different destinations by taking into account information associated with the components." *In re TLI Commc'ns*, 2015 WL 627858, at *12 (citing *Cyberfone*, 558 F. App'x at 991). The steps of the invalidated claim involved "analyzing and differentiating data based on classification information." *Id*. These steps are nearly identical to the '797 Patent's requirements of "filtering the plurality of photographic images using a transfer criteria" and then transmitting the filtered photographs. The '797 Patent claims for the idea of filtering and transmitting filtered photographs should therefore be found patent ineligible for the same reasons the Federal Circuit found "the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible." *Cyberfone*, 558 F. App'x at 992.

Similarly in *In re TLI Communications*, the claim at issue required that a computer server "extracts from the received data the classification information which characterizes the digital images." *In re TLI Commc'ns*, 2015 WL 627858, at *12. In that case, the district court found that extracting data based on classification information was also an abstract idea:

> The extraction step simply involves a computer receiving this classification information that applies to the photographs and using the classification information to organize the photographs. But such a step is not a meaningful limitation on the monopoly claimed in Claim 17 because, as another district court correctly noted concerning a similar computer function, "[h]umans engaged in this sort of indexing long before this patent, and the claim does not put

forth an innovative and unconventional method of indexing." Here too, Claim 17's method of extracting classification information is not unique. Photographs are classified using certain metrics—e.g., time—and then organized in a directory accordingly, which does not require anything other than a generic computer, especially considering that human beings have created photo albums in essentially this way for more than a century. What is dressed up in the "patent-ese"-type convoluted language is nothing more than categorizing photographs based on when they were taken or on some other characteristic or basis.

*In re TLI Commc'ns*, 2015 WL 627858, at *13 (quoting *Enfish*, 2014 WL 5661456, at *8).

Likewise, the '797 Patent's requirement of filtering based on transfer criteria amounts to the type of organizing or indexing of photographs that humans have been doing for over a century. The transfer criteria recited in certain patent claims is simply basic classification information—*e.g.,* the geographic location where the picture was taken—used to sort digital photographs that does not amount to an inventive concept. "Computerizing" this process so that digital photographs can be filtered by a generic computer processor and transmitted by a generic mobile device does not confer patentability. *See, e.g.*, *CyberSource*, 654 F.3d at 1372; *Cogent*, 2014 WL 4966326, at *4; *Hewlett Packard*, 2015 WL 1133244, at *11.

### 2. Additional Limitations Fail to Supply an "Inventive Concept."

The additional limitations of certain claims related to either the recited transfer criteria or the relationship between the two mobile devices that are sharing the photographs do not provide inventive concepts beyond the abstract idea of sorting and sharing photographs. *See* Section II, *supra*; *Alice*, 134 S. Ct. at 2355.

### a. Limitations Relating to Specific "Transfer Criteria" (Claims 1-7, 9-14)

Thirteen of the sixteen '797 Patent claims contain limitations relating to the criteria for filtering the photographs to be transmitted—*i.e.*, the "transfer criteria."[5] For example, claims 5 and 13 require that "the transfer criteria is a geographic location associated with a respective

---

[5] Only eight of the '797 Patent claims—*i.e.*, claims 1, 3, 5, 6, 9, 11, 13, and 14—expressly recite limitations relating to "transfer criteria." Five other dependent claims—*i.e.*, claims 2, 4, 7, 10, and 12—depend from claims that recite "transfer criteria" limitations, and thus necessarily contain the "transfer criteria" limitations. These five dependent claims also contain limitations relating to the "relationship" between mobile devices, which are addressed in Section IV.B.2.b, *infra*.

photographic image within the plurality of photographic images." Ex. 1 at cls. 5, 13. Claims 1, 3, 6, 9, 11, and 14 recite similar limitations. *See* Ex. 1 at cls. 1, 3, 6, 9, 11, 14 (requiring that the transfer criteria is either (1) a geographic location of the image-capturing device; (2) received from the second mobile device; or (3) a subject identification of one of the photographic images). None of these limitations provide an inventive concept to the abstract idea of filtering photographs using a transfer criteria and sharing the filtered photographs. The addition of the specifics of the transfer criteria does not add significantly more to the abstract idea of the claim. As discussed above, anyone who has taken photographs before the digital era would easily recognize that the specifics of the criteria used to filter or sort images adds nothing significant to the basic process of filtering photographs. Indeed, that a person must apply a specific criteria for their sorting of photographs is inherent in the concept of "sorting." Criteria such as the location where the photograph was taken or who is in the photograph are commonly used by people when they sort photographs.

Accordingly, adding the specifics of the transfer criteria to the '797 Patent claims simply creates a narrower application of the same abstract idea. A narrower application of an abstract idea is still an abstract idea, which does not provide an inventive concept. *Content Extraction*, 776 F.3d at 1349 ("Thus, while these claims may have a narrower scope than the representative claims, no claim contains an 'inventive concept' that transforms the corresponding claim into a patent-eligible application of the otherwise ineligible abstract idea."); *In re TLI Commc'ns*, 2015 WL 627858, at *17 (finding that although the dependent claims are a narrower application, they "still rely on [the] generic recitation of a computer and a telephone unit, and none of the[] limitations provide an innovative use of a computer to confer patentability on any of the dependent claims").

Thus, claims 1, 3, 5, 6, 9, 11, 13, and 14 are all invalid under Section 101.

> **b.**  **Limitations Relating to the "Relationship" Between the Mobile Devices (Claims 2, 4, 7, 8, 10, 12, 15, 16)**

Claims 2, 4, 7, 8, 10, 12, 15, and 16 add limitations that define a relationship between the two mobile devices that are sharing the photographs. *See* cls. 2, 4, 7, 8, 10, 12, 15, 16 (requiring

that the image capturing mobile device and the second mobile device are either (1) in a selectively paired relationship with one another based upon an affinity group; (2) are disposed in a selectively paired relationship with one another based upon the geographic location; (3) are disposed in a selectively paired relationship with one another based upon the subject identification; or (4) meet a pre-defined pairing criteria). None of these limitations are sufficient to add an inventive step to the abstract ideas claimed in the '797 Patent.

Like the additional transfer criteria limitations, these additional limitations concerning the relationship between the two mobile devices are also abstract ideas, which cannot convert an abstract idea into a patent-eligible invention. *See Shortridge v. Found. Constr. Payroll Serv., LLC*, No. 3:14-cv-04850-JCS, 2015 WL 1739256, at *11 (N.D. Cal. Apr. 14, 2015) ("[T]he Court is aware of no case holding that merely combining two or three abstract ideas brings a patent within the scope of § 101, and the available authority tends to suggest the contrary."). As discussed above with respect to the recited wireless receiver, wireless transmitter, and processor, the specification fails to provide any description as to what it means for mobile devices to be in a "selectively paired relationship." *See* Section II, *supra*. Indeed, the simple fact that one mobile device is transmitting photographs to a second mobile device creates a paired relationship. The requirement of a selectively paired relationship between the claimed mobile devices does not add anything significantly more to the abstract idea of two conventional mobile devices—or any two computer devices for the matter—sharing selected photographs. That the users of the two devices might be members of the same group, as discussed in Section II, does not confer an inventive concept. For example, that John wants to share some of his photographs from his road trip with a group such as his family or his hockey team is a simple mental process. *CyberSource*, 654 F.3d at 1372; *Cogent*, 2014 WL 4966326, at *4. The patent specification also admits that sharing photographs in the form of albums on sharing websites such as Shutterfly was a well-known activity before the claimed invention of the '797 Patent. Ex. 1 at 1:57-67. As such, the limitations relating to the relationship between the mobile devices does not add an inventive concept to the claims of the '797 Patent and thus claims 2, 4, 7, 8, 10, 12, 15, and 16 are invalid under Section 101.

1    **V.    CONCLUSION**

2            For the foregoing reasons, Samsung respectfully requests that the Court grant Samsung's

3    Motion for Judgment on the Pleadings because each claim of the '797 Patent is invalid under 35

4    U.S.C. § 101 for lack of patent-eligible subject matter.

5

6    Date:  April 21, 2015                    FISH & RICHARDSON P.C.

7                                              _/s/ Wasif Qureshi_
                                              Wasif Qureshi
8
                                             Attorneys for Defendants
9                                             SAMSUNG ELECTRONICS CO., LTD., SAMSUNG
                                             ELECTRONICS AMERICA, INC., and SAMSUNG
10                                            TELECOMMUNICATIONS AMERICA, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed **Samsung Defendants' Notice Of Motion And Motion For Judgment On The Pleadings Based On 35 U.S.C. § 101 (Unpatentable Subject Matter)** with the clerk of court for the United States District Court, Northern District of California, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

April 21, 2015                                             /s/ Wasif Qureshi
Date                                                         Wasif Qureshi