Jill F. Kopeikin (State Bar No. 160792)
Valerie M. Wagner (State Bar No. 173146)
GCA LAW PARTNERS LLP
2570 W. El Camino Real, Suite 510
Mountain View, CA 94040
Tel: (650) 428-3900
Fax: (650) 428-3901
jkopeikin@gcalaw.com
vwagner@gcalaw.com

Andrew M. Howard (Texas 24059973)*
SHORE CHAN DEPUMPO LLP
901 Main Street, Suite 3300
Dallas, TX 75202
Telephone: (214) 593-9110
Facsimile: (214) 593-9118
*Admitted Pro Hac Vice

Attorneys for Plaintiff ROTHSCHILD STORAGE RETRIEVAL INNOVATIONS, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ROTHSCHILD STORAGE RETRIEVAL INNOVATIONS, LLC,<br><br>*Plaintiff,*<br><br>SAMSUNG ELECTRONICS CO., *et al.*,<br><br>*Defendants.* | Case No. 3:15-cv-00539 – EDL<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO SAMSUNG DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON 35 U.S.C. § 101 (UNPATENTABLE SUBJECT MATTER)**<br><br>Date: May 26, 2015<br>Time: 9:00 a.m.<br>Courtroom: E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

# TABLE OF CONTENTS

**Contents**

I. INTRODUCTION .................................................................................... 1

II. FACTUAL BACKGROUND..................................................................... 1

III. LEGAL STANDARD ............................................................................... 4

IV. ARGUMENTS AND AUTHORITY ......................................................... 6

    A. The ideas of the '797 patent are not fundamental truths and do not pre-empt the entire field of image capturing, filtering, and transmitting............................................................................................. 6

    B. The '797 patent's pre-defined transfer and pairing criteria are inventive concepts. ......................................................................................... 9

        1. A pre-defined transfer criteria is rooted in computer technology that confines the scope of the claims. ..................................... 10

        2. A pre-defined pairing criteria cannot be performed by human thought alone....................................................................... 12

V. CONCLUSION........................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)...................................................................................9

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*,
  134 S.Ct. 2347 (2014) ................................................................................. 5, 9, 10

*Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*,
  133 S.Ct. 2107 (2013) .................................................................................................4

*Bilski v. Kappos*,
  561 U.S. 593 (2010)....................................................................................................5

*California Inst. of Tech. v. Hughes Commnc's Inc.*,
  No. 2:13-cv-07245-MRP-JEM,
  2014 WL 5661290 (C.D. Cal. Nov. 3, 2014)................................................... 6, 10

*Card Verification Solutions, LLC v. Citigroup Inc.*,
  No. 13-C-6339, 2014 WL 4922524 (N.D. Ill. Sept. 29, 2014).............................7

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)...................................................................................6

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
  558 F.App'x 988 (Fed. Cir. 2014) ....................................................... 8, 9, 11, 13

*Cybersource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011)................................................................... 6, 10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014)......................................................... 9, 10, 11, 12

*Gottschalk v. Benson*,
  93 S.Ct. 253 (1972)....................................................................................................4

*Helios Software, LLC v. SpectorSoft Corp.*,
  No. 12-081-LPS, 2014 WL 4796111 (D. Del. Sept. 25, 2014) ............................6
*I/P Engine, Inc. v. AOL Inc.*,
  576 Fed.Appx. 982 (Fed. Cir. 2014) ...................................................................5
*In re TLI Commc'ns Patent Litig.*,
  14-md-02534-TSE, 2015 WL 627858 (E.D. Va. Feb. 6, 2015) ..................... 8, 12
*Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*,
  No. 13-cv-1274-SLR, 2014 WL 7215193 (D. Del. Dec. 18, 2014) ......................8
*Le Roy v. Tatham*,
  55 U.S. 156 (1852) ..............................................................................................4
*Mayo Collaborative Servs. v. Prometheus Labs, Inc.*,
  132 S.Ct. 1289 (2012) .........................................................................................5
*Open Text S.A. v. Alfresco Software Ltd.*,
  No. 13-CV-4843, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ........................4
*OpenTV, Inc. v. Apple, Inc.*,
  No. 14-cv-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ..................6
*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
  601 F.3d 1319 (Fed. Cir. 2010) ........................................................... 8, 9, 10, 11
*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
  346 F.3d 1057 (Fed. Cir. 2003) ...........................................................................4
*Wolf v. Capstone Photography, Inc.*,
  No. 2:13-cv-09573-CAS-PJW, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014) .4, 8

**Statutes**

35 U.S.C. § 101 ........................................................................................................4

## I. INTRODUCTION

The exclusionary principle of 35 U.S.C. § 101 applies only to "fundamental truths" and does not automatically render a concept patent-ineligible. A patent-eligible concept exists when the concept integrates building blocks into something more and poses no comparable risk of pre-empting the "fundamental truths" from public use. The claims of RSRI's[1] U.S. Patent No. 8,437,797 (the "'797 patent") (D.I. 76-2) disclose the use of "geographic location" information and "selectively paired relationship" concepts that are not "fundamental truths." Samsung's[2] piecemeal allegation of the individual claim elements of RSRI's '797 patent as "abstract ideas" ignores the transformative nature of the combination of the totality of the claim elements. When the combination of the elements is taken into account, an improved system and method for pre-defined filtering based on geographic location and/or pre-defined pairing based on an affinity group is claimed for the purpose of instantaneous, automatic, and/or selective distribution of photographic images.

## II. FACTUAL BACKGROUND

The purpose of the '797 patent is to "dispose one or more capturing devices in a communicative relation with one or more receiving devices for instantaneous, automatic, and/or selective distribution of images therebetween." '797 patent col. 2 ll. 9-12. This is achieved when the capturing and receiving devices are "disposed in a selectively paired relationship via one or more common pre-defined pairing criteria" and where "at least one digital photographic image may be filtered via at least one pre-defined transfer criteria

---

[1] "RSRI" hereinafter refers to Plaintiff Rothschild Storage Retrieval Innovations, LLC.
[2] "Samsung" hereinafter refers collectively to Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON 35 U.S.C. § 101**  1  *3:15-cv-00539-EDL*

disposed on the capturing device and/or receiving device." *Id.* at Abstract. The patent's specification discloses embodiments for encoding geographic location information during capture and for automatic communication, where devices are disposed in a communicative relation prior to capture and automatically communicate selective images upon capture. *Id.* at col. 5 l.61 – col. 6 l. 17.

Claims 1, 5, and 8 are system claims, and their equivalent method claims are claims 9, 13, and 16, respectively. The claims are as follows:

> *Claim 1. An image-capturing mobile device comprising*
> *a wireless receiver;*
> *a wireless transmitter; and*
> *a processor operably connected to the wireless receiver and the wireless transmitter, wherein the processor is configured to initiate and/or perform*
> *receiving a plurality of photographic images;*
> *filtering the plurality of photographic images using a transfer criteria; and*
> *transmitting, via the wireless transmitter and to a second mobile device, the filtered plurality of photographic images, wherein*
> **the transfer criteria is a geographic location of the image-capturing mobile device**.
>
> *Claim 5. An image-capturing mobile device, comprising*
> *a wireless receiver;*
> *a wireless transmitter; and*
> *a processor operably connected to the wireless receiver and the wireless transmitter, wherein the processor is configured to initiate and/or perform*
> *receiving a plurality of photographic images;*
> *filtering the plurality of photographic images using a transfer criteria; and*

> > *transmitting, via the wireless transmitter and to a second mobile device, the filtered plurality of photographic images, wherein*
> > > ***the transfer criteria is a geographic location associated with a respective photographic image within the plurality of photographic images***.
>
> *Claim 8. An image-capturing mobile device, comprising*
> > *a wireless receiver;*
> > *a wireless transmitter; and*
> > *a processor operably connected to the wireless receiver and the wireless transmitter, wherein the processor is configured to initiate and/or perform*
> > > *receiving a plurality of photographic images;*
> > > *filtering the plurality of photographic images using a transfer criteria; and*
> > > *transmitting, via the wireless transmitter and to a second mobile device, the filtered plurality of photographic images, wherein*
> > > > ***the image-capturing mobile device and the second mobile device are disposed in a selectively paired relationship with one another based upon an affinity group associated with the second mobile device***.

Claims 1, 5, 9, and 13 share three functions: receiving, filtering based on a geographic location, and transmitting. The filtering in these claims use a transfer criteria based on the specific geographic location of either the image-capturing mobile device or is associated with a photographic image. *See* '797 patent col. 5 ll. 48-50. Claims 8 and 16 share the three functions of claims 1, 5, 9, and 13—receiving, filtering based on a transfer criteria, and transmitting—and include a pre-defined affinity group for pairing devices in a communicative relationship. The affinity group is a pre-defined list or identification of groups to which the

device owner or user belongs. *Id.* at col. 7 ll. 3-46. Embodiments of a "selectively paired relationship" include the automatic pairing without the user's input or contribution. *Id.* at col. 11 l. 61 – col. 12 l. 4.

## III. LEGAL STANDARD

When attempting to invalidate a patent on 35 U.S.C. § 101 grounds, a challenger must overcome the presumption that "every issued patent is presumed to have been issued validly absent clear and convincing evidence to the contrary." *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-CV-4843, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014); *see State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003) ("A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence."). "Put differently, prior to claim construction, a patent claim can be found directed towards patent ineligible subject matter if the ***only*** plausible reading on the patent must be that there is clear and convincing evidence of ineligibility." *Wolf v. Capstone Photography, Inc.*, No. 2:13-cv-09573-CAS-PJW, 2014 WL 7639820, at *5 (C.D. Cal. Oct. 28, 2014) (internal quotations omitted) (emphasis added).

Section 101 defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Unpatentable exceptions to this provision are laws of nature, natural phenomena, and abstract ideas. *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2116 (2013). "A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right." *Gottschalk v. Benson*, 93 S.Ct. 253, 255 (1972) (quoting *Le Roy v.*

*Tatham*, 55 U.S. 156, 175 (1852). However, "an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 134 S.Ct. 2347, 2354 (2014).

The "concern that drives this exclusionary principle [is] one of pre-emption." *Id.* at 2354; *see also Bilski v. Kappos*, 561 U.S. 593, 612 (2010) (finding an abstract idea alone is problematic because it "would pre-empt use of [the abstract idea] in all fields, and would effectively grant a monopoly over an abstract idea."). As noted by Judge Mayer of the Federal Circuit, a "robust application" of § 101 ensures "that patent protection promotes, rather than impedes, scientific progress and technological innovation." *I/P Engine, Inc. v. AOL Inc.*, 576 Fed.Appx. 982, 996 (Fed. Cir. 2014) (nonprecedential) (Mayer, J., concurring). But "[a]t some level, 'all inventions…embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S.Ct. at 2354 (quoting *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S.Ct. 1289, 1293 (2012)). As such, courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.* at 2354.

Courts must therefore evaluate patent eligibility using the two-part *Mayo* test. *Id.* at 2355. First, a court must ask if the claim is "directed to one of those patent-ineligible concepts"—a law of nature, physical phenomenon, or abstract idea. *Id.* Second, if the claim is directed to one of these concepts, the court must ask "[w]hat else is there in the claims before us?" *Mayo*, 132 S.Ct. at 1297. In other words, the court must determine whether there is an "inventive concept" that "ensure[s] that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S.Ct. at 2355. "[A]pplication[s]" of such abstract concepts "to a new and useful end" remain

eligible for patent protection. *Id.* at 2354 (citing *Gottschalk v. Benson*, 93 S.Ct. 253 (1972).

## IV. ARGUMENTS AND AUTHORITY

### A. The ideas of the '797 patent are not fundamental truths and do not pre-empt the entire field of image capturing, filtering, and transmitting.

The first part of the test requires the court to identify whether a claim is directed to an abstract idea. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346- 1347 (Fed. Cir. 2014). "To do this, the court must identify the purpose of the claim—in other words, what the claimed invention is trying to achieve—and ask whether that purpose is abstract." *California Inst. of Tech. v. Hughes Commc'ns Inc.*, No. 2:13-cv-07245-MRP-JEM, 2014 WL 5661290, at *3 (C.D. Cal. Nov. 3, 2014). When analyzing whether a claim is directed to an abstract idea, some courts ask whether the claims' steps "can be performed in the human mind, or by a human using a pen and paper." *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) (quoting *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).

Samsung cannot "show that [the ideas from the '797 patent, namely encoding geographic coordinates with images,] are fundamental truths or fundamental principles the patenting of which would pre-empt the use of basic tools of scientific and technological work." *Helios Software, LLC v. SpectorSoft Corp.*, No. 12-081-LPS, 2014 WL 4796111, at *17 (D. Del. Sept. 25, 2014). Samsung ignores the step of "filtering the plurality of photographic images using a transfer criteria" that is either a geographic location of the device or associated with the image. Instead, Samsung over-generalizes two concepts—(1) sorting

1 photographs using a transfer criteria, and (2) sharing the sorted photographs—to
2 align its reasoning that sorting and transmitting is a fundamental truth. (D.I. 76 at
3 14-15). When sorting and transmitting are combined with the step of filtering
4 images based on geographic information, as required by the '797 patent, the pen
5 and paper test fails.

6       The encoding of geographic information, such as longitude and latitude
7 coordinates, is not a fundamental truth because it cannot be done with pen and
8 paper. In *Card Verification Solutions, LLC v. Citigroup Inc.*, No. 13-C-6339,
9 2014 WL 4922524, at *4 (N.D. Ill. Sept. 29, 2014), the court, upon review of the
10 patent's diagrams, found that "a plausibly narrowing limitation is that of required
11 pseudorandom tag generating software" that could not be done with pen and
12 paper. Like in *Card Verification*, the use of a location module, such as a Global
13 Positioning System ("GPS"),[3] to filter photographs based on geographic location
14 information cannot be done with pen and paper. '797 patent col. 5 ll. 41-66; col.
15 9 ll. 45-58. The "GPS and/or geographic location information (e.g., the latitude
16 and longitude)" is encoded by the location system "***during the capture*** of each
17 digital photographic image." *Id.* at col. 5 ll. 41-66. No picture taker could
18 simultaneously record the location by hand while taking the picture. The '797
19 patent allows for automatic encoding of geographic location so that this
20 information can be used for filtering a group of photos based on this geographic
21 information. Therefore, "an entirely plausible interpretation of the claims include
22 a limitation requiring [geographic location] tag generating software that could not
23 be done with pen and paper." *Card Verification*, 2014 WL 4922524, at *4.

---

26 [3] Other location modules include GLONASS (Russia); BeiDou (China); Galileo
27 (European Union); and IRNSS (India).

The '797 patent claim elements—(1) filtering the plurality of photographic images using a transfer criteria;" (2) "the transfer criteria is a geographic location of the image-capturing mobile device;" (3) "the transfer criteria is a geographic location associated with a respective photographic image within the plurality of photographic images;" and (4) "the image-capturing mobile device and the second mobile device are disposed in a selectively paired relationship with one another based upon an affinity group associated with the second mobile device"—are not "fundamental truths." These and other steps from the '797 patent are not fundamental truths, but precise words of engineering and technology.

None of Samsung's cited authority involve the use of geographic location information encoded by a location module such as a GPS unit for sorting data: *Cyberfone* (generic sorting); *In re TLI Communications* (sorting by time); *Wolf* (sorting by code acquired from component worn by participant); and *Intellectual Ventures* (sorting by user instruction). Samsung can only rely on its own hypothetical to argue that the sorting of photos based on geographic location is allegedly a fundamental truth claimed by the '797 patent. (D.I. 76 at 16). Samsung cannot clearly and convincingly show that the filtering of images based on geographic information is a fundamental truth.

Despite the patent's explicit disclosure of a "geographic location" encoded by a GPS-like system, Samsung suggests that concepts such as those utilized by GPS systems are fundamental truths and preempt the entire field of sorting photographs. Without a GPS system, latitude and longitude coordinates are calculated with a sextant by measuring angles of celestial objects relative to the horizon. The Federal Circuit understood the complexity of a GPS system and holds that "the presence of the GPS receiver in the claims places a ***meaningful***

*limit on the scope of the claims*." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332 (Fed. Cir. 2010) (emphasis added). Samsung concedes that the inclusion of a transfer criteria creates a narrower scope. *See* (D.I. 76 at 22) ("Accordingly, adding the specifics of the transfer criteria to the '797 Patent claims simply creates a narrower application of the same abstract idea."). The concept of filtering images based on geographic location plays a central role in the performance of '797 patent claims. *SiRF Tech.*, 601 F.3d at 1333. Accordingly, Samsung is unable to show that the concept of filtering images using a geographic location is a fundamental truth that preempts the entire field of image capturing, filtering, and transmitting.

### B. The '797 patent's pre-defined transfer and pairing criteria are inventive concepts.

The Court need not reach this section if it finds that the '797 patent contains more than a mere "abstract idea." *See e.g.*, *Helios Software*, 2014 WL 4796111, at *17. If, however, the Court finds in the alternative, the Court is required to "search for an 'inventive concept.'" *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014) (quoting *Alice*, 134 S.Ct. at 2355). The court must "consider the elements of each claim—both individually **and as an ordered combination**—to determine whether the additional elements transform the nature of the claim into a patent-eligible application of that abstract idea." *Id.* (emphasis added). "The second step in the § 101 analysis requires determining whether 'additional substantive limitations…narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself.'" *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, 558 Fed.Appx. 988, 992 (Fed. Cir. 2014) (quoting *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d

1336, 1341 (Fed. Cir. 2013). (internal quotations omitted). The "geographic location" and "selectively paired relationship" concepts of the '797 patent are not fundamental truths, but are necessarily rooted in computer technology to overcome the problem specifically arising in the realm of instantaneous and automatic geo-tagged photo sharing technologies. *See DDR Holdings*, 773 F.3d at 1257.

### 1. *A pre-defined transfer criteria is rooted in computer technology that confines the scope of the claims.*

"[T]o impart patent-eligibility to an otherwise unpatentable process under the theory that the process is linked to a machine, the use of the machine must impose meaningful limits on the claim's scope." *Cybersource*, 654 F.3d at 1375 (internal quotation marks omitted). To be "a meaningful limit on the scope of a claim," the addition of a machine "must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly." *SiRF Tech.*, 601 F.3d at 1333.

Samsung isolates the individual elements of "a wireless receiver," "a wireless transmitter," and "a processor" to argue that the '797 lacks an inventive concept. (D.I. 76 at 18-19). While the '797 patent claims do recite these three elements, the claims, when read as a whole, recite more than simply "apply[ing] it" to a computer and claiming additional functions of the processor and/or image-capturing device. *See Alice*, 134 S.Ct. at 2355, 2358; *see also California Inst. of Tech.*, 2014 WL 5661290, at *13 ("When viewing claim elements as an ordered combination, the court should not ignore the presence of any element, even if the element, viewed separately, is abstract… [C]ourts should remember that a series of conventional elements may together form an unconventional,

1 patentable combination."). Simply put, patent claims are read as a whole, not as
2 dissected elements argued separately to overcome the presumption of validity.

When reading claims 1, 5, 9, and 13 in their entirety, the claims limit the processor of an image-capturing device to initiating and/or performing the filtering of photographs based on geographic location information encoded by a location system (e.g., GPS). A location module, such as a GPS system, encodes the geographic location information of the device "**during the capture** of each digital photographic image." '797 patent col. 5 ll. 41-66 (emphasis added). The GPS coordinates are then associated with the captured image and are used to determine which of the photographs, if any, are communicated. *Id.* at col. 9 ll. 52-58. For the '797 patent to operate as intended, the use of the "geographic location" is necessarily rooted in computer technology to overcome the problem specifically arising in the realm of instantaneous and automatic geo-tagged photo sharing technologies. *DDR Holdings*, 773 F.3d at 1257.

Ignoring the necessity of a GPS-like system, Samsung generically alleges "anyone who has taken photographs before the digital era would easily recognize that the specifics of the criteria used to filter or sort images adds nothing significant to the basic process of filtering photographs." (D.I. 76 at 22). But as the Federal Circuit noted, "the presence of the GPS receiver in the claims places a meaningful limit on the scope of the claims." *SiRF Tech.*, 601 F.3d at 1332.

"It is…clear that the claims at issue do not attempt to preempt every application of the idea of [photo sorting and sharing]." *DDR Holdings*, 773 F.3d at 1259. "Rather, they recite a specific way to [filter images using geographic location information] to solve a problem faced by [standard photo sharing systems.]" *Id.* Thus, the presence of the "geographic location" concept confines the claims to "geographic location" obtained by GPS-like systems and does not

pre-empt the generalized idea of sorting and sharing photographs. *Cf. Cyberfone*, 558 Fed.Appx. at 992.

### 2. *A pre-defined pairing criteria cannot be performed by human thought alone.*

The '797 patent does not simply apply an "idea" to a computer, but defines the specific manner in which "the image-capturing mobile device and the second mobile device are disposed in a selectively paired relationship with one another." For independent claims 8 and 16, the selectively paired relationship is based on an affinity group that "comprises a list or identification of groups the owner or user belongs to." '797 patent col. 7 ll. 20-21. "In addition, the pairing criteria may be automatically associated with the particular device and stored on the electronic storage medium, ***without the user's input or active contribution***. For instance…one device may be configured in an "available" or "visible" mode such that another device may be disposed in the paired relation therewith. Upon such pairing or disposition of the devices in a communicative relation with one another, in at least one embodiment, the pairing criteria is automatically associated with or stored on each of the devices for future pairing." '797 patent col. 11 l. 61 – col. 12 l. 4 (emphasis added).

In such embodiments, one's own human presence could not be made "invisible" from the exchange of photographs. *Cf. In re TLI Commcn's LLC Patent Litig.*, MDL No. 1:14md2534, 2015 WL 627858, at *6 (E.D. Va. Feb. 6, 2015) (holding an abstract idea is a "method that can be performed by human thought alone"). For the '797 patent to function as intended, the selectively paired relationship concept is "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of [instantaneous and automatic geo-tagged photo sharing technologies]." *DDR Holdings*, 773 F.3d at 1257. Specifically, the "selectively paired relationship" may include "device

identification or ID, a device name, social and/or affinity groups, e-mail address associated with the device or user of the device, geographic location of the device, subject identification of the image, geographic location where the image was captured, etc." '797 patent col. 7 ll. 9-13. An affinity group may also comprise of "a list or identification of groups the owner or user belongs to" and can "be ***specified, updated, or designated on the device itself***." *Id.* at col. 7 ll. 20-23 (emphasis added). The affinity group can be "synchronized with an interactive social network accessible via the World Wide Web" and be "synchronized with the user's 'friends' or 'contacts' on the one or more interactive social networks" via the internet. *Id.* at col. 7 ll. 37-46.

Samsung's hypothetical is demonstrative of why the "selectively paired relationship" is an inventive concept. Samsung alleges John can determine with his human mind and interaction whether he wants to "share some of his photographs from his road trip with a group such as his family or his hockey team." (D.I. 76 at 23). But John's family or hockey team cannot broadcast whether they are "available" or "visible" such that the pairing can be automatically associated for future pairing. *See* '797 patent col. 11 l. 64 – col. 12 l. 4. John cannot, without a technological environment, automatically synchronize and update its desired pairing groups, or automatically associate with a particular recipient "without the user's input or active contribution." '797 patent col. 11 ll. 61-64.

Accordingly, the "selectively paired relationship" concept of claims 8 and 16 are necessarily rooted in computer technology that "narrow[s], confine[s], or otherwise tie[s] down the claim[s] so that, in practical terms, it does not cover the full abstract idea [of photo sharing] itself.'" *Cyberfone*, 558 Fed.Appx. at 992.

## V. CONCLUSION

For all the foregoing reasons, RSRI respectfully requests the Court to deny Samsung's Motion for Judgment on the Pleadings based on 35 U.S.C. § 101.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON 35 U.S.C. § 101**   14   *3:15-cv-00539-EDL*

| | |
|---|---|
| Dated: May 5, 2015 | Respectfully submitted, |
| | */s/ Andrew M. Howard* |
| | Andrew M. Howard |
| | |
| | Jill F. Kopeikin (State Bar No. 160792) |
| | jkopeikin@gcalaw.com |
| | Valerie M. Wagner (State Bar No. 173146) |
| | vwagner@gcalaw.com |
| | GCA LAW PARTNERS LLP |
| | 2570 W. El Camino Real, Suite 500 |
| | Mountain View, CA 94040 |
| | Telephone: (650) 428-3900 |
| | Facsimile: (650) 428-3901 |
| | |
| | Andrew M. Howard (Texas 24059973)* |
| | SHORE CHAN DEPUMPO LLP |
| | 901 Main Street, Suite 3300 |
| | Dallas, TX 75202 |
| | Telephone: (214) 593-9110 |
| | Facsimile: (214) 593-9118 |
| | |
| | *Admitted Pro Hac Vice |
| | |
| | Attorneys for Plaintiff |
| | ROTHSCHILD STORAGE RETRIEVAL INNOVATIONS, LLC |

# **CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed **Plaintiff's Response in Opposition to Samsung Defendants' Motion for Judgment on the Pleadings based on 35 U.S.C. § 101** with the clerk of court for the United States District Court, Northern District of California, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

| | |
|---|---|
| May 5, 2015 | */s/ Andrew M. Howard* |
| Date | Andrew M. Howard |